Mary JOYCE and Joseph W. Cirillo,
Appellants–Defendants,

v.

Paul M. JOYCE, Appellee–Plaintiff.

No. 49A02–9304–CV–196.

Court of Appeals of Indiana,
Second District.

Jan. 20, 1994.

James M. Secrest, James M. Secrest, P.C., Indianapolis, for appellant-defendant Joseph W. Cirillo.

David L. Byers, Holwager & Holwager, Beech Grove, for appellee-plaintiff.

FRIEDLANDER, Judge.

### CASE SUMMARY

Appellants-defendants Mary Joyce (Mary) and Joseph W. Cirillo (Joseph) appeal the grant of summary judgment entered in favor of Paul M. Joyce (Paul).

We affirm.

### FACTS

The facts most favorable to Joseph and Mary, the nonmoving parties, are that Paul and Mary were divorced on November 30, 1981. They entered into a Property Settlement Agreement (agreement) which provided in relevant part as follows:

"5. REAL ESTATE. The wife receives possession of and is declared the individual owner of the parties' real estate located at 8140 Fishback, Indianapolis, Indiana, the legal description of which is attached hereto as Exhibit 'A,' title to which heretofore has been vested in the Husband and Wife as tenants by the entireties, subject to a

first mortgage with Merchants National Bank, which the wife shall assume liability for and pay, holding the husband free, harmless and indemnified thereon; *and the Husband shall execute a deed to the Wife upon signing by the parties of this agreement, conveying all his right, title and interest in the above described real estate to the wife, said conveyance to the wife being subject to the husband's judgment for Twenty Five Thousand Dollars ($25,000.00), as set out in Paragraph 6 below.*

6. DIVISION OF EQUITY. The Husband's share of the equity in the parties' real estate is Twenty Five Thousand Dollars ($25,000.00). Said judgment of Twenty Five Thousand Dollars ($25,000.00) shall be due and payable, in full, upon the sale of the subject real estate by the Wife, upon the death of the Wife or upon emancipation of the parties' minor children."

*Record* at 52–53 (emphasis supplied). Also on November 30, 1981, a decree for dissolution of marriage was entered which provided in pertinent part:

"4. That the Property Settlement Agreement concerning the division of marital assets which has heretofore been signed in this action is not unconscionable, and the same shall be approved by the Court and made a part of this Decree and attached hereto, the same as if its terms and provisions were fully recited herein and each of the parties is hereby ordered and directed to carry out the terms and provisions of said Agreement."

*Record* at 6, 43, 51.

Paul transferred his interest in the property to Mary by quitclaim deed which was recorded on December 1, 1981. The language of the deed specifically made the transfer of the property "subject to" Paul's judgment for $25,000. This judgment was indexed in the judgment docket at the county clerk's office on November 30, 1981.

By warranty deed dated February 18, 1992 and recorded on February 19, 1992, Mary conveyed the real estate to Joseph. Paul filed his complaint to foreclose his judgment lien on the property on April 23, 1992, and he subsequently filed a motion for summary

judgment against Joseph on November 10, 1992. The trial court granted Paul's motion and entered judgment as follows:

"The Court having taken this matter under advisement now denies defendant's Motion to Dismiss, and grants plaintiff's Motion for Summary Judgment. The court finds that the Property Settlement Agreement was an agreement under 34–1–45–2 which extened [sic] the judgment lien beyond 10 years and the Complaint to Foreclose was timely filed."

*Record* at 78.

### ISSUE

Did the trial court properly determine that Paul's judgment lien was enforceable?

### DECISION

■ Paul's lien was enforceable, and we reject Mary and Joseph's argument that the lien was invalid because Paul failed to execute on his judgment within a ten-year period of time as prescribed by Ind.Code 34–1–45–2 (1988) [hereinafter referred to as the judgment lien statute].

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to prove there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369.

When reviewing an entry of summary judgment, this court stands in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Id.; Delval v. PPG Industries, Inc.* (1992), Ind. App., 590 N.E.2d 1078, *trans. denied.*

The judgment lien statute provides that:

"All final judgments for the recovery of money or costs in the circuit court and other courts of record of general jurisdic-

tion sitting in the State of Indiana, whether state or federal, shall be a lien upon real estate and chattels real liable to execution in the county where, and only where, such judgment has been duly entered and indexed in the judgment docket as provided by law, from and after the time the same shall have been so entered and indexed, and until the expiration of ten (10) years from the rendition thereof, and no longer, *exclusive of the time during which the party may be restrained from proceeding thereon by any appeal or injunction or by the death of the defendant, or by agreement of the parties entered of record.*"

As indicated above, the judgment lien statute contains an exception to the ten-year time period for those periods of time that a party is restrained from proceeding *by agreement of the parties* entered of record. The quitclaim deed executed from Paul to Mary was expressly made subject to Paul's judgment. The deed also gave notice that the judgment was "pursuant to Decree of Dissolution of Marriage and Property Settlement Agreement in the Marion County Superior Court...." *Record* at 72.

While Joseph argues that Paul's judgment was not definite as to duration, the decree of dissolution clearly shows that the parties' youngest child, Anthony, was born in September, 1976. Therefore, when the property was sold on February 18, 1992, Joseph was charged with notice that Anthony was only fifteen years old. Anthony had not yet been emancipated. *See* Ind.Code 31–1–11.5–12. In accordance with the exception contained in the judgment lien statute, the period of time during which Paul was restrained from proceeding by agreement may not be included within the judgment lien's ten-year time period. The period therefore began to run when Mary transferred the property to Joseph, and Paul was not barred from executing on his judgment.

■ We also observe that Paul's lien was enforceable in accordance with Ind.Code 31–1–11.5–15 (1988) (the security for payment statute) which provides that:

"Upon entering an order pursuant to section 11 or 12 [property division and child support] of this chapter, the court may provide for such security, bond or other guarantee that shall be satisfactory to the court to secure the obligation to make child support payments or to secure the division of property."

In *Franklin Bank and Trust Co. v. Reed* (1987), Ind., 508 N.E.2d 1256, our supreme court determined that the legislature clearly intended to give the dissolution court the power to enforce its orders providing for division of the parties' property by ordering a security bond or other guarantee. In writing for the majority, Justice Pivarnik observed that:

"The court also has the power to completely sever the interests of the parties in each other's share including any lien interest arising under [the judgment lien statute]. Since the judgment lien statute is general in its application, however, giving a judgment lien to one obtaining a judgment in any action, such a lien is not automatically eliminated by the dissolution statute. Rather, *the dissolution statute gives the court authority to overcome the judgment lien, or to augment it, or to limit it. But silence of the court does not eliminate the automatic provision in the judgment lien statute. The court may exercise its inherent power and eliminate a judgment lien only by positive action.*

*Id.* at 1259 (emphasis supplied).

The agreement between Paul and Mary provided that Paul was to convey the marital property to Mary "subject to the husband's judgment for ... $25,000...." *Record* at 53. The agreement also provided when Paul's judgment was "due and payable." *Record* at 53. The judgment lien statute and the security for payment statute are "complementary and should not be interpreted as mutually exclusive." *Id.* at 1258.

By transferring the real estate subject to Paul's judgment for $25,000, we conclude that the parties adequately included a security provision in the property settlement agreement which extended the life of the judgment lien that was created.[1] The disso-

1. Although the agreement and the decree served · to grant Paul a judgment against Mary, neither

lution court's approval of the agreement, including the terms for the repayment of Paul's judgment, permitted it to augment and extend the lien that existed in accordance with the agreement. *See Franklin Bank, supra.* The judgment lien statute and the security for payment statute, when read in conjunction with each other, effectively extended Paul's judgment beyond the ten-year period.

The trial court therefore properly granted Paul's motion for summary judgment.

Judgment affirmed.

SULLIVAN and STATON, JJ., concur.

document described a specific lien against the property. The agreement also failed to specifically describe any security, bond, or other guarantee for the payment of the judgment. We would encourage the inclusion of such language in settlement agreements and dissolution decrees so as to avoid confusion regarding the application of the judgment lien statute and/or the security for payment statute and to show the clear intent of the parties.